UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:15-CR-15 |
| v. | ) | |
| | ) | |
| JUAN ALBERTO ROBLES ZAVALA, | ) | (PHILLIPS / SHIRLEY) |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on April 29, 2015, for a motion hearing on the Defendant's Motion to Dismiss the Indictment [Doc. 26], filed on April 9, 2015. Assistant United States Attorney Jennifer Kolman appeared on behalf of the Government, along with Extern Karissa Hazard. Attorney Mike Whalen represented the Defendant, who was also present and participated with the aid of an interpreter. The Government presented the testimony of Investigator Tom Evans of the Knoxville Police Department (KPD) and both parties presented argument on the issues. After considering the evidence, briefs, arguments, and relevant case law, the Court finds that the Indictment is sufficient as a matter of law and recommends that the Defendant's Motion to Dismiss Indictment be denied.

I. **POSITIONS OF THE PARTIES**

The Defendant is indicted [Doc. 17] with a single count of violating 18 U.S.C. § 2422(b). The Indictment alleges that from October 18, 2014, to February 6, 2015, the Defendant

1

used a facility of interstate commerce to attempt to persuade, induce, and entice a minor to engage in sexual activity in violation of Tennessee Code Annotated § 39-13-522, which prohibits the sexual penetration of or by a minor who is between three and thirteen years of age.

The Defendant contends [Doc. 26] that the Indictment should be dismissed because no trier of fact could find him guilty of violating 18 U.S.C. § 2422(b) based upon the undisputed facts of this case. Specifically, he argues that his actions do not constitute a violation of § 2422(b) as a matter of law because his only communications were with an adult and the plain language and legislative history to § 2422 clearly shows that the statute only proscribes communications to an actual minor. He also argues that the Indictment should be dismissed because the undisputed facts do not show that he had the requisite intent or took a substantial step toward persuading a minor, even through an adult intermediary.[1]

The Government responds [Doc. 27] that § 2422(b) does not require that an actual minor be involved. Instead, it argues that a defendant may be prosecuted under § 2422(b) for communicating with an adult posing as a minor or for using an adult as an intermediary to attempt to entice a minor to engage in criminal sexual activity. Additionally, the Government contends that the undisputed facts of this case show that the Defendant had the intent to commit the crime and took a substantial step toward its commission.

---

[1] Although not explicitly raised in his motion and legal memorandum, the Defendant seems to assert in passing [see Doc. 26, pp. 22-23] that law enforcement entrapped him into the online communications because the officer instigated any discussion of sex with a minor without reason to believe that the Defendant was already willing to commit the crime. In its response, the Government asserts that the involvement of law enforcement in this case did not constitute entrapment. At the April 29 hearing, defense counsel did not present argument on the issue of whether the police had entrapped the Defendant. The Government stated that it was prepared to argue about the entrapment issue, but the Court declined to hear this argument, finding that it was not integral to the Defendant's arguments to dismiss the Indictment. The Defendant did not object to this characterization. Accordingly, the Court finds that the issue of entrapment is not, and arguably could not be (see footnote 3), raised in this motion to dismiss the Indictment.

2

## II.    SUMMARY OF FACTS

The parties agreed that the Affidavit [Exh. 1] of Special Agent Michelle Evans of the U.S. Department of Homeland Security, filed in support of the Criminal Complaint [Doc. 1], contains the basic facts of this case. Additionally, the Government presented the testimony of Investigator Tom Evans along with copies of screen shots of the Defendant's communications on the GetItOn.com website [Exh. 2] and copies of emails between the Defendant and two undercover email accounts used by Investigator Evans [Exh. 3].

The Court summarizes the account of the events taken from the affidavit as follows: Investigator Tom Evans managed an undercover profile of a single mother with a minor child on the social networking website GetItOn.com, which advertises itself as designed for users to find "'sexually compatible matches.'" [Exh. 1, ¶4] The undercover profile was that of a woman who stated that she was "looking for experience, patient, non-sadistic trainier. I have myself and a younger version of me."[2] [Exh. 1, ¶5] Law enforcement, posing as this woman, posted a comment on the website, stating that she was "needing a teacher for taboo." [Exh. 1, ¶5]

On October 18, 2014, an individual, later identified as the Defendant, emailed the woman from the undercover profile, stated that he wanted to start chatting with her, and signed as "Roblesj from get it ont." [Exh. 1, ¶6] After a second email from the Defendant on October 23, asking "You think this may work? Tell me about you[,]" Investigator Evans, posing as Kelli, the woman from the undercover profile, replied "If you are wanting to help me train my little me." [Exh. 1, ¶7] The Defendant responded that he was interested and asked Kelli to tell him about her "Little you." [Exh. 1, ¶7] On November 3, the Defendant emailed Kelli that he had not heard back from her and that he "would really like to help you on this taboo[.]" [Exh. 1, ¶8]

---

[2] The posts and emails of the Defendant and the undercover officer are reproduced in this Report and Recommendation without corrections to spelling and grammar.

On November 21, Investigator Evans, assuming the undercover persona of Kelli, emailed the Defendant that she was "looking discreetly for someone for her daughter[,]" that her daughter is almost thirteen and is interested in sex, and that she (Kelli), as an incest survivor, believes things would have been better if her prior sexual experiences had been in "a more caring and loving environment[.]" [Exh. 1, ¶9] On November 22, the Defendant emailed Kelli, stating he believed Kelli was "doing this" to protect her daughter from having a bad experience and, as he read Kelli's email, he wondered if he "could be the one[.]" [Exh. 1, ¶9] The Defendant stated that he attended to the satisfaction of his partner, would like Kelli "to be present during this[,]" and that "she" needs care, "pariente and good and soft drive[.]" [Exh. 1, ¶9] The Defendant asked Kelli, "What are your expectations from me?" [Exh. 1, ¶9] On November 23, the Defendant emailed Kelli that "age is not a problem if >12 and you are present and support the situation." [Exh. 1, ¶10]

On November 30, Investigator Evans, posing as Kelli, emailed the Defendant that she would have to be present, that her daughter is a virgin, and that they are looking for a man who will be gentle and take his time. [Exh. 1, ¶11] Kelli said she was not comfortable letting the Defendant come to her house on the first meeting but was "sure we can come up with something." [Exh. 1, ¶11] That same day, the Defendant emailed Kelli, "I think to discover reactions on her body she needs to experience different caresses from a kiss to more intimate experiences and also be able to give[.] [Exh. 1, ¶12] The Defendant suggested that they meet at a mall and then a hotel. [Exh. 1, ¶12] He asked if Kelli had contacted other men about this and "How can we both feel safe on this encounter?" [Exh. 1, ¶12]

On December 5, the Defendant emailed Kelli suggesting that he "meet you both" after Christmas at a location Kelli had previously mentioned. [Exh. 1, ¶13] On December 6, the Defendant emailed Kelli, stating "Yes, please start talking to her on it," and attaching a

photograph of himself.  [Exh. 1, ¶14]  On December 7, Investigator Evans, posing as Kelli, emailed the Defendant that she would start talking to her daughter.  [Exh. 1, ¶15]  Kelli stated,

> I was brought up in an incest family so I am more open when it comes to sex and children.  if you have second thoughts then its best to tell me now and not get her hopes up.  I will wait till i hear back from youi before I tell her you will be her first sexual experience. i dont want her feelings hurt. Thnx K.

[Exh. 1, ¶15]  The Defendant replied, stating

> I confirm to you, I will do it, when say not being easy is because will be new to me and can not visualize it.  i also know about legal risks but i am building trust on you.  Hope you understand so, lets move on with the proposed plan.

[Exh. 1, ¶15]

Investigator Evans, posing as Kelli, told the Defendant he could communicate with her twelve-year-old daughter Amy by emailing Amy at Kelli's account.  [Exh. 1, ¶16]  On December 8, the Defendant emailed Kelli's account, saying "Hello Amy, I Just want to introduce myself with you, please feel free to Ask what ever worries you, I want to make sure you are confortable and ready for the time we get to meet each other."  [Exh. 1, ¶16]  On December 10, Investigator Evans emailed the Defendant from Kelli's email account but posing as her daughter "Amy," stating that she (Amy) was looking forward to going to the hotel because of the indoor pool.  [Exh. 1, ¶17]  Amy stated that she worried that "it" would hurt but that her mom said that it would hurt a little at first but then go away.  [Exh. 1, ¶17]  On December 11, the Defendant replied to Amy, at Kelli's email account, that the right person who acts carefully will help the experience to be good, that her mom knows what is good for her, and that he looks forward to meeting her soon and hopes she will enjoy the indoor pool at the hotel.  [Exh. 1, ¶18]

On December 27, Investigator Evans, posing as Kelli, emailed the Defendant regarding the plans for where they would meet and some ground rules for the encounter, such as no anal sex and condoms are required.  [Exh. 1, ¶19]  The Defendant responded that same day,

stating his intentions are "caresses, kisses, oral sex and mutual masturbation before penetration and she being below me when ready to do it[.]" [Exh. 1, ¶19] On December 28, the Defendant emailed Amy at Kelli's account, stating what he planned to do when they are together in a few days: "mutual caresses, kisses and maybe mutual masturbation so we can be ready for the next step." [Exh. 1, ¶20] The Defendant asked if Amy would like oral sex and stated his plan to penetrate her from above, when she was ready, so as not to hurt her. [Exh. 1, ¶20] Subsequent emails reveal that Investigator Evans, posing as Kelli, postponed the plans to meet, stating that Amy had a fever. On December 30, the Defendant emailed Amy at Kelli's account, stating that he hoped she was feeling better and that "if we want this to happen later we will find the time to do it and will be a great experience!" [Exh. 1, ¶21]

On January 22, the Defendant emailed the fictitious daughter Amy at another undercover email account set up for her, saying he was looking forward to meeting her and "Please feel free to talk about any question or concern you may have, I want you to feel confortable with me. I have think a lot on our first time trying to figure out what would be good for you that makes a good experience so you can enjoy it and learn from it[.]" [Exh. 1, ¶23] On January 22, the Defendant also emailed Kelli, confirming arrangements to meet in Knoxville on January 30, at a predetermined hotel. [Exh. 1, ¶24] On January 29, the Defendant emailed Kelli that February 6 was a potential alternative date for him to meet her and Amy. [Exh. 1, ¶27]

On January 30, the Defendant emailed Amy at her email account, stating that he hoped she understood that he could not meet until next Friday due to events at work. [Exh. 1, ¶28] The Defendant stated "I really want to meet you and I will make what ever I need to be there next Friday and if you like I cans stay overnight with you[.]" [Exh. 1, ¶28] The Defendant emailed Kelli on February 5, stating

I am planning to leave about 2pm it may take 2h drive so I should be getting there at 4pm.  I am driving a gray x-type sedan.  I may need to head back about 7 pm but I would love to go out for dinner with both of you.  Next time I may stay overnight if you would like me to do that.  See you there!

[Exh. 1, ¶29]  On February 6, the Defendant emailed Kelli when he left Chattanooga, when he arrived in Knoxville, and when he arrived at the hotel.  [Exh. 1, ¶30]  The Defendant was arrested as he arrived at the Fairfield Inn Hotel.  [Exh. 1, ¶30]

At the April 29 hearing, Investigator Evans confirmed that the Defendant had actually corresponded only with adults during the entire investigation.  He agreed that GetItOn.com was targeted at adults.  He stated that the Defendant's profile on GetItOn.com contained nothing about minors and that the Defendant did not express an interest in minors on the website.  He said that the Defendant initially contacted "Kelli" on the GetItOn.com website to determine how they would communicate.  Investigator Evans testified that, acting as Kelli, he selected the hotel for the meeting, as well as the time and how they would meet but that the Defendant agreed to these details.  Investigator Evans stated that law enforcement seized a work computer, a cellular telephone, and thumb drives from the Defendant at the time of his arrest.  Law enforcement has completed its review of the computer and thumb drives, and they contain no child pornography.  He stated that the review of the telephone was not yet complete but that law enforcement had found nothing related to child pornography so far.

Pursuant to questioning by the Government, Investigator Evans stated that GetItOn.com existed for the purpose of people meeting for sexual encounters.  He said that the Defendant expressed an interest in "taboo."  He stated that the Defendant could have stopped communicating with Kelli or reported her in order to get out of the situation.  He said that at the time of the Defendant's arrest, the Defendant was asked why he did not stop communicating

7

with Kelli or report the situation, and the Defendant responded that if the mother was holding the child out, it was the mother's problem and not his.

Upon re-examination by defense counsel, Investigator Evans testified that he believed that the Defendant was into "taboo" because he saw Kelli's profile and chose taboo as something to ask about. He stated that the Defendant asked Kelli how he could help her explore taboo. Investigator Evans did not agree that most of the conversations on GetItOn.com were fantasy, although he agreed that the chance of meeting someone from the website is "fairly low." He agreed that there was nothing illegal about adults having sexual liasons.

## III. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury." U.S. Const. amend V. "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landham, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense,

coming under the general description, with which he is charged.'" <u>Hamling</u>, 418 U.S. at 117-18

(quoting <u>United States v. Hess</u>, 124 U.S. 483, 487 (1888)); <u>Landham</u>, 251 F.3d at 1079.

The Indictment charges the Defendant with attempt to violate 18 U.S.C. § 2422(b).

Section 2422(b) states:

> Whoever, using the mail or any facility or means of interstate or
> foreign commerce, or within the special maritime and territorial
> jurisdiction of the United States knowingly persuades, induces,
> entices, or coerces any individual who has not attained the age of
> 18 years, to engage in prostitution or any sexual activity for which
> any person can be charged with a criminal offense, or attempts to
> do so, shall be fined under this title and imprisoned not less than 10
> years or for life.

In order to obtain a conviction for attempt, the Government must prove that the Defendant had

the specific intent to persuade, induce, entice, or coerce a minor and that he took a substantial

step toward completing the violation.  <u>See</u> <u>United States v. Bailey</u>, 228 F.3d 637, 639-40 (6th

Cir. 2000).  Before analyzing the issues raised by the Defendant, the Court will first address

whether the issues the Defendant raises may be determined pretrial or should be reserved for the

jury.

## A.  Propriety of Pretrial Determination

The Defendant contends that, in the instant case, the undisputed evidence cannot, as a

matter of law, establish a violation of § 2422(b) beyond a reasonable doubt.  Although typically

the question of whether the facts constitute a charged crime beyond a reasonable doubt is a

matter for the jury to decide, the Defendant argues that the Court can determine this issue pretrial

because the facts are undisputed and such a determination would conserve judicial resources.

Federal Rule Criminal Procedure 12(b)(2) states that "[a] party may raise by pretrial

motion any defense, objection, or request that the court can determine without a trial of the

general issue." Moreover, the Court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Resolution of a pretrial motion to dismiss the indictment for failure to state an offense is appropriate when the "facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." Id. at 665. In Jones, the appellate court held that the district court properly decided the defendant's motion to dismiss the indictment "because [the motion] raised the legal question of whether [the statute at issue] was intended to apply to interspousal wiretaps" and the facts relating to the issue were "virtually undisputed[.]" Id. See also United States v. Vertz, 40 F. App'x 69, 71 (6th Cir. 2002) (stating that "where the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in the indictment, the [c]ourt is reviewing a question of law, not fact").

From Jones and Rule 12(b), the Court distills two requirements for addressing a motion to dismiss the indictment which alleges that the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed. Jones, 542 F.2d at 665. The undisputed nature of the evidence is an important predicate to a court's determination of a motion to dismiss the indictment. If the evidence relating to the issue raised by the parties is disputed, the court runs the risk of treading upon the role of the grand jury:

> When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial. The indictment is not evidence, as every petit jury in a criminal case is instructed. The prosecution must still produce evidence from which the trial jury can find every element of the offense proven beyond a reasonable doubt, or the defendant is

> entitled to a judgment of acquittal. However, the prosecution's
> evidence is tested at trial, not in a preliminary proceeding.

United States v. Short, 671 F.2d 178, 183 (1982); see also United States v. Levin, 973 F.2d 463, 472 (6th Cir. 1992) (Boyce, J., dissenting) (decrying "the district court's pre-trial decision that the government would not be able to establish the requisite criminal intent at trial [as being], in essence, a decision that the indictment was based on insufficient or inadequate evidence").

The Defendant raises three primary issues: (1) whether communicating with an adult intermediary or an adult posing as a minor is a violation of § 2422(b); (2) whether the Defendant had the intent to persuade, entice, or induce a minor to have sex with him; and (3) whether Defendant's actions constitute a substantial step toward violating § 2422(b).[3] The Court examines each of these issues to determine whether they may be determined without a trial.

The Court finds that the issue of whether communicating with an intermediary or an adult posing as a minor, instead of directly with a minor, can constitute a crime pursuant to § 2422(b) is clearly a matter of law. In fact, the present question is very similar to the question presented in Jones (e.g., whether the statute with which the defendant was charged was intended to apply to interspousal wiretaps). Likewise, the Defendant's motion on this particular issue raises the legal question of whether § 2422(b) was intended to apply to intermediaries and/or undercover adults. See Jones, 542 F.2d at 665; see also United States v. Ali, 557 F.3d 715, 719 (6th Cir. 2009) (observing that a "motion under Rule 12 is therefore appropriate when it raises questions of law

---

[3] As noted above (see footnote 2), the Defendant also appears to be advancing an entrapment defense at several points in his motion and legal memorandum. At the hearing, the Court established that the Defendant was not raising entrapment as a separate issue in his motion to dismiss. However, even if the Defendant were arguing that the Court should dismiss the indictment because the facts show that the police entrapped him, the Court finds that this issue would not be a proper basis for the dismissal of the Indictment in the instant case. While entrapment can be a defense to a § 2422(b) charge, whether law enforcement entrapped Defendant Robles Zavala requires interpretation of the statements of the Defendant and the fictitious mother and minor. The parties strenuously dispute how these statements should be construed. The Defendant does not raise a legal question that can be determined in a motion to dismiss the Indictment. Accordingly, this issue is not properly before the Court.

rather than fact"). This is the type of pretrial matter that Rule 12 intended courts to resolve. Moreover, the parties do not dispute the relevant fact—that the Defendant communicated with an undercover adult at all times and never communicated with an actual minor. Accordingly, the Court finds that the issue regarding the intermediary/undercover adult is properly before the Court.

Next, the Defendant argues that no evidence exists that he intended to use the telephone or internet to persuade, entice, or induce a minor. He contends that there is no evidence that he sought anything but consensual relations with an adult. He asserts that the Government cannot prove that he communicated with someone he believed to be a minor and attempted to persuade the minor to engage in illicit sexual activity. In essence, the Defendant asks this Court to decide whether he had the requisite intent to commit a violation of § 2422(b).

"Where a criminal intent is one of the elements of an offense, its existence is a question of fact to be determined by the trier of facts." United States v. Luxenberg, 374 F.2d 241, 249 (6th Cir. 1967) (citing Morissette v. United States, 342 U.S. 246, 274 (1952)) (concluding that "[w]here intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury."). But see Levin, 973 F.2d at 4466, -70 (affirming the district court's dismissal of the indictment because the "government could not prove the required element of intent necessary to support a conviction" but noting that this was "an unusual criminal case"). The Court finds that the Defendant communicated with a person he believed to be a minor[4] by emailing her account directly. While the actual words that the Defendant emailed to Amy are undisputed, the parties heartily dispute how these words should be interpreted. The Defendant appears to argue that none of his statements to Amy could be construed as an attempt to entice her to have sex with him. The Government strongly disagrees, citing to phrases that it

---

[4] The fact that Amy was actually an adult officer posing as a twelve-year-old girl is part of the first issue above.

contends do just that. The undersigned finds that, based on the statements in the Defendant's email messages to Amy, taken in the context of all of the email between the Defendant and Kelli and the Defendant and Amy, a reasonable jury could determine that the Defendant had the requisite intent. In other words, the Court cannot find, *as a matter of law*, that the Defendant did not intend to entice, persuade, or induce a minor by his email.

Finally, the Defendant asks this Court to decide whether the Government is able to prove beyond a reasonable doubt that he took a substantial step toward enticing or persuading a minor to have unlawful sexual relations. He argues that (1) the evidence is undisputed that he always communicated with an adult and (2) while the facts may show that he arranged to meet with an adult to have a sexual liason, they do not show that he used the telephone or the internet to seduce a minor. The Government, on the other hand, takes a different view of the evidence. It contends that several parts of the Defendant's emailed communications seek to entice the fictitious minor Amy to have sex with him.

Setting aside the first issue discussed above of whether communications with an undercover adult can ever constitute a violation of the statute, the parties essentially dispute whether the statements made by the Defendant to the fictitious minor are made to entice or persuade her to have sex with the Defendant. As with the issue of the Defendant's intent, the parties do not dispute the content of the email but disagree on how those words should be construed.

A motion to dismiss the indictment is not "an opportunity to argue the sufficiency of the evidence." United States v. Silvius, No 1:12-cr-172, 2012 WL 5878841, at *2 (N.D. Ohio Nov. 21, 2012). In fact, "[w]hen a pretrial motion raises questions of fact intertwined with issues involving the merits of the case . . . a court should defer determination of that matter until trial." Id. Essentially, the Defendant requests that the Court interpret and weigh the evidence against

him, which is similar to a summary judgment motion in a civil case. Weighing the evidence "invade[s] the province" of the jury, and the Court declines to do so in the instant matter. Jones, 542 F.2d at 664. Accordingly, the Court finds that the issue of whether the Defendant's statements to the fictitious minor and his subsequent travel to meet the fictitious minor and her mother can constitute a substantial step toward enticing the minor to have sex with him is not properly before this Court in a motion to dismiss the Indictment.[5] See Constello v. United States, 350 U.S. 359, 363 (1956) (stating that defendants do not have the right to a "preliminary trial to determine the competency and adequacy of the evidence before the grand jury"). Stated another way, the Court cannot find that the aforementioned email, including the email messages regarding arrangements to meet at a specific hotel, and the travel to and arrival at that hotel in this case fails to constitute a substantial step toward the commission of the offense *as a matter of law*.

In summary, the Court will address whether a person can violate § 2422(b) by communicating with an adult intermediary or an adult posing as a minor. For purposes of the Defendant's Motion to Dismiss the Indictment, the allegations in the Indictment must be taken as true. See United States v. Hann, 574 F. Supp. 2d 827, 830 (M.D. Tenn. 2008).

## B. Intermediaries and Undercover Officers

The Defendant contends that the plain language, the legislative history, and legislative purpose behind § 2422(b) reveal that an individual cannot violate the statute by communicating solely with an adult. Thus, he argues that communications with an adult intermediary (a parent, guardian, or other adult claiming to have access to the minor) or with an adult posing as a child

---

[5]The Court notes in passing that in a similar case, a defendant's travel to and arrival at the prearranged location at which the sexual encounter with the minor was supposed to transpire was part of the evidence indicating a substantial step in the violation of § 2422(b). See United States v. Harmon, 593 F. App'x 455, 465 (6th Cir. 2014), cert. denied 135 S. Ct. 1579 (2015).

do not come within the ambit of the statute. The Defendant argues that he never used or attempted to use the telephone or internet to relay a message to a person purportedly under age eighteen to attempt to persuade, induce, entice, or coerce that minor to participate in prohibited sexual activity. Instead, he argues that the evidence in this case shows that he only communicated with someone who represented that she was an adult, but was actually a police officer, and that person enticed him to discuss activity that possibly constituted a crime. Thus, he contends that the charge must be dismissed.

The Government responds that the vast majority of circuit courts that have addressed this issue have held that a § 2422(b) prosecution may proceed when a defendant uses an adult decoy or an adult intermediary to attempt to entice a minor. It argues that the Sixth Circuit has rejected the premise that an actual minor must be involved in order to apply § 2422(b). See United States v. Hackworth, 483 F. App'x 972, 978 (6th Cir. 2012) (holding that § 2422(b) criminalizes "conduct even when an actual minor is not on the receiving end of the communications"), cert. denied 133 S. Ct. 841 (2013); United States v. Fuller, 77 F. App'x 371 378 (6th Cir. 2003) (holding that a defendant may be convicted under § 2422(b) when he believed he was communicating with a minor, but was instead communicating with an adult officer posing as a minor); see also United States v. Hughes, 632 F.3d 956, (6th Cir. 2011) (rejecting Fifth and Eighth Amendment challenges to ten-year mandatory minimum sentence for defendant convicted under § 2422(b) for enticing minor, who was actually undercover officer). The Government points out that although the Sixth Circuit has not addressed the issue of adult intermediaries, this Court has twice upheld § 2422(b) prosecutions that were based on an adult intermediary theory. See United States v. James Amos Parker, No. 3:12-154-DCR, 2013 WL 1497432 (E.D. Tenn. April 10, 2013); United States v. Dustin Michael Jarrett, 3:12-CR-144, 2013 WL 1117871 (E.D.

Tenn. Jan. 18, 2013).  It maintains that communicating with a decoy adult, instead of an actual child, is sufficient to constitute a violation under § 2422(b).

As "in any case concerning the interpretation of a statute, the 'starting point' must be the language of the statute itself."  Lewis v. United States, 445 U.S. 55, 60 (1980).  Section 2422(b) prohibits using a facility of interstate commerce, such as the telephone system or internet, to "knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense" or the attempt to do the same.  Section "2422(b) does not require proof of a specific intent to actually engage in sexual activity."  Hughes, 632 F.3d at 961. "While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade." Bailey, 228 F.3d at 639.  "Section 2422(b), in other words, was designed to protect children from the act of solicitation itself[.]"  Hughes, 632 F.3d at 961.  The Defendant argues that because the plain language of § 2422(b) prohibits the solicitation of a *minor*, communications strictly with another adult cannot come within the statute.

The Sixth Circuit has held that "[t]he statutory language supports the reading that § 2422(b) does not require an actual minor for conviction."  Hackworth, 483 F. App'x at 977. "[T]he very inclusion of an 'attempt' provision indicates that 'something less than the actual persuasion of a minor is necessary for conviction.'"  Id. (quoting United States v. Tykarsky, 446 F.3d 458, 466 (3d Cir. 2006)).  Our appellate court agreed with the Third Circuit in Tykarsky that requiring an actual minor would read the attempt language out of statute because there is little difference between enticement and attempted enticement.  Id.  "The focus should be on the defendant's subjective intent [to persuade or entice], not the actual age of the victim."  Id.  Thus,

16

the court concluded that § 2422(b) "criminalizes conduct even when an actual minor is not on the receiving end of the communications." Hackworth, 483 F. App'x at 978 (upholding a conviction in which the defendant communicated with an undercover agent posing as a minor).

In an unpublished case, the Eastern District of Michigan has also applied this reasoning to a defendant's communications with a ficitious parent. United States v. Saucedo, No. 07-20286, 2007 WL 3124658, at *5 (E.D. Mich. Oct. 25, 2007). In Saucedo, as in the present case, an agent created an online undercover persona of a mother of two young children, and both the mother and children were fictional. Id. at *1. The defendant communicated with the agent, who was posing as the fictional mother, online, telling her that he wanted to have sex with her children, describing the specific sexual acts he wanted to perform, encouraging the fictional woman to meet him, giving directions to a meeting place, and asking that she call him when she arrived at the location. Id. The defendant was subsequently charged with attempted coercion and enticement in violation of § 2422(b) and moved to dismiss the indictment, arguing that "based on the plain language of the statute, a person of ordinary . . . intelligence would not be on notice that communications with an adult intermediary are punishable under the statute." Id. at *2.

Relying on the decisions outside the Sixth Circuit, the Michigan District Court observed that by communicating with the parent, the defendant sought to *induce*, or cause, the minor to engage in unlawful sexual activity. Id. at 4 (relying on the reasoning of United States v. Murell, 368 F.3d 1283, 1287 (11th Cir. 2004)). Moreover, sexual predators should not be allowed to circumvent § 2422(b) by dealing with an intermediary, especially a parent who has great influence over the minor. Id. (citing Murell, 368 F. 3d at 1287). Finally, the Michigan District Court embraced the reasoning of the Third Circuit in Tykarsky that requiring an actual minor

would read attempted solicitation out of the statute.  Id. at 4.  The court denied Saucedo's motion

to dismiss the indictment, reasoning that

> Saucedo's clear intent in his Instant Messages was to have sexual
> relations with minors.  This is exactly the type of conduct that
> Congress intended to prevent in enacting the statute.  Had his plans
> been carried out, Saucedo would have engaged in sexual relations
> with minors even if his communications were with an adult
> intermediary.  Under § 2422(b), the crime is the in persuasion,
> inducement, enticement and the coercion or attempt thereof. The
> fact that Saucedo was talking with a "decoy parent" does not
> change Saucedo's attempt to induce a sexual relationship with a
> minor.

Id. at *5.

Although it has yet to expressly address the issue of adult intermediaries, the Sixth

Circuit has recently affirmed a jury instruction in a § 2422(b) case, which stated that the

government could prove the defendant enticed a minor by communicating with someone he

believed to be her parent or guardian.  United States v. Harmon, 593 F. App'x 455, 467 (6th Cir.

2014), cert. denied 135 S. Ct. 1579 (2015).

Other circuits have uniformly held that communications with an adult intermediary can

form the basis for a conviction under § 2422(b).  United States v. Berk, 652 F.3d 132, 140 (1st

Cir. 2011) (stating that "a defendant can be convicted even if the relevant communications are

with an intermediary"); United States v. Douglas, 626 F.3d 161, 165 (2d Cir. 2010) (stating that

"placing a sexual predator's communications with an adult intermediary beyond the reach of the

statute would be an illogical result"); United States v. Lee, 603 F.3d 904, 914 (11th Cir. 2010)

(stating that "section 2422(b) does not require an actual minor"); United States v. Kelly, 510

F.3d 433, 442 (4th Cir. 2007) (stating that "[i]t would be anomalous to allow prosecution of

those individuals who successfully place a specific, identified child in danger, yet set free those

who possess the prohibited intent, but are prevented from placing a real child in danger by

effective law enforcement"); United States v. Spurlock, 495 F.3d 1011, 1013-14 (8th Cir. 2007)

(rejecting the defendant's argument that the statute requires direct communication with a minor);

United States v. Tykarsky, 446 F.3d 458, 469 (3d Cir. 2006) (stating that "[i]nterpreting §

2422(b) to require the involvement of an actual minor would render the attempt provision largely

meaningless"); United States v. Farner, 251 F.3d 510, 513 (5th Cir. 2001) (rejecting the

defendant's argument that it was legally impossible to violate § 2422(b) because his

communications were with an undercover adult).

In holding that communicating with an adult intermediary is sufficient and violates §

2422(b), the Second Circuit reasoned:

> We agree with the Eleventh Circuit that the "efficacy of § 2422(b)
> would be eviscerated if a defendant could circumvent the statute
> simply by employing an intermediary to carry out his intended
> objective." Potential victims of enticement may be too young to
> use the Internet or otherwise communicate directly with strangers
> without their parents' supervision. Criminals who target such
> children will perforce operate through intermediaries. If we were to
> agree with [the defendant's] assumption that the statute sought to
> protect only those minors who are old enough to sign into a chat
> room, we would be ignoring Congress'[s] objective of protecting
> vulnerable children.

Douglas, 626 F.3d at 165 (quoting Murrell, 368 F.3d at 1287). In addition, as one court

explained, "[e]ven if we were to accept the limitation on the terms in § 2422(b)" the defendant

"would still be guilty because, again, he was convicted of a crime of attempt." United States v.

Nestor, 574 F.3d 159, 162 (3d Cir. 2009).

The Defendant relies upon the legislative history and purpose behind § 2422(b) to argue

that the Court should depart from the well-trodden path taken by the many courts holding that

communication solely with an adult intermediary comes with in the ambit of this statute.  He

contends that when subsection (b) was added to § 2422, Congress sought to protect minors from

indecent or obscene communications on the internet.  He asserts that Congress intended the

19

statute to apply only to direct communications to minors, as evidenced by the concerns of some legislators that the statute not extend to communications between two adults.

The Sixth Circuit has questioned whether the legislative history of § 2422(b) supports an interpretation that the statute only applies when an actual minor is involved:

> In <u>United States v. Gagliardi</u>, the Second Circuit took note of a House Judiciary Committee report from the time of § 2422(b)'s 1998 amendment, which stated that
>
> > law enforcement plays an important role in discovering child sex offenders on the Internet before they are able to victimize an actual child. Those who believe they are victimizing children, even if they come into contact with a law enforcement officer who poses as a child, should be punished just as if a real child were involved. It is for this reason that several provisions in this Act prohibit certain conduct involving minors and assumed minors.

<u>Hackworth</u>, 483 F. App'x at 978 (quoting <u>United States v. Gagliardi</u> 506 F.3d 140, 146 (2d Cir. 2007) (citing H.R.Rep. No. 105–557, at 19 (1998), 1998 U.S.C.C.A.N. 678)).

Moreover, the Third Circuit has examined both the plain language of § 2422(b) and its legislative history when analyzing an argument identical to the Defendant's. <u>Tykarsky</u>, 446 F.3d at 469. "After examining the text of the statute, its broad purpose and its legislative history, we conclude that Congress did not intend to allow the use of an adult decoy, rather than an actual minor, to be asserted as a defense to § 2422(b)." <u>Id.</u> at 469. "The [1998] amendment to § 2422(b) was . . . part of an overall policy to aggressively combat computer-related sex crimes against children. It would be wholly inconsistent with the purpose and policy of the statute to allow sexual predators to use adult intermediaries to shield themselves from prosecution." <u>Nestor</u>, 574 F.3d at 162. "Because the 'legislative history is replete with congressional recognition that young children need special protection against sexual exploitation,' <u>United</u>

States v. Daniels, 685 F.3d 1237, 1248 (11th Cir. 2012), the Court rejects [the defendant's] assertion that the charges against him are inconsistent with the underlying purpose or background of § 2422(b)." Parker, No. 3:12-154-DCR, 2013 WL 1497432, *6.

The Court sees no reason to depart from the reasoning of the many cases that have previously analyzed this issue. More importantly, the Sixth Circuit has already agreed that requiring the "involvement of an actual minor would render [attempt under § 2422(b)] largely meaningless," Hackworth, 483 F. App'x at 977, and has signaled its agreement that § 2422(b) applies to communications with adult intermediaries, Harmon, 593 F. App'x at 467. Accordingly, the Court finds that § 2422(b) can be violated by communicating with an adult posing as a minor or an adult intermediary.

In the instant case, the facts alleged in the Affidavit supporting the Criminal Complaint reveal that the Defendant communicated via email with an adult intermediary (Investigator Evans posing as Kelli, the mother of a twelve-year-old girl) and with an adult posing as a minor (again Investigator Evans posing as twelve-year-old Amy). Although the Defendant and the Government have different views of whether the Defendant's communications to the fictitious mother and daughter were intended to persuade, induce, or entice Amy to have sex with him, the Court finds that the facts are legally sufficient to state an offense. The undersigned cannot determine *as a matter of law* that no violation of § 2422(b) occurred.

## IV.    CONCLUSION

After carefully considering the parties' filings and arguments and the relevant legal authorities, the Court finds no basis to dismiss the Indictment. For the reasons set forth herein, it is **RECOMMENDED** that Defendant's Motion to Dismiss the Indictment [**Doc. 26**] be **DENIED**. [6]

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).